**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **FLSMIDTH A/S, a Danish corporation;** ) | |
| **FLSMIDTH INC., a Delaware** ) | |
| **corporation; and THOMAS ENERGY** ) | |
| **SYSTEMS, INC. d/b/a TESCORP, an** ) | |
| **Oklahoma corporation,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No. 08-CV-0215-CVE-SAJ** |
| ) | |
| **JEFFCO, LLC, an Oklahoma limited** ) | |
| **liability company,** ) | |
| ) | |
| **Defendant.** ) | |

<u>**OPINION AND ORDER**</u>

Now before the Court is the Motion by All Plaintiffs/Counter-Defendants (1) To Dismiss Jeffco's Counterclaim Counts III, V, and VI, or, in the Alternative, for a More Definite Statement; (2) For a More Definite Statement as to Jeffco's Counterclaim Counts II and IV; and (3) for an Extension of Time to Answer Jeffco's Counterclaim Count I (Dkt. # 40).[1]

**I.**

On April 16, 2008, FLSmidth A/S, FLSmidth Inc., and Thomas Energy Systems, Inc. d/b/a TESCORP ("TESCORP") filed a lawsuit against Jeffco, LLC ("Jeffco") alleging three claims of trademark infringement and trade dress infringement under the Lanham Act, 15 U.S.C. §§ 1114 and 1125, a claim under the Oklahoma Deceptive Trade Practices Act, OKLA. STAT. tit. 78, § 51 et seq., and a claim for unfair competition under Oklahoma common law. Dkt. # 2. The complaint alleges

---

[1]     The Court granted plaintiffs' request to extend the answer deadline to defendant's counterclaims and set the same answer deadline for all of defendant's counterclaims. Dkt. # 43.

that Fuller Company, FLSmidth Inc.'s predecessor, patented and marketed a rotary vane compressor used in a pneumatic system for conveying bulk materials under the trademark name "Fuller."  Fuller Company registered "Fuller" as a trademark on December 9, 1969 and the trademark  was assigned to HTPT Corporation ("HTPT") on December 21, 1989.  HTPT was established by Fuller Company to manage its intellectual property.  On January 1, 2007, HTPT assigned its rights in the "Fuller" trademark to FLSmidth A/S.

On or about March 12, 2004, FLSmidth A/S and FLSmidth Inc. stopped using the "Fuller" trademark and began labeling its compressors with the mark "FLSmidth." However, compressors with the trademark of Fuller and FLSmidth are both available in the marketplace.   Even though FLSmidth companies currently uses the trade name "FLSmidth" rather than "Fuller," plaintiffs allege that the Fuller mark carries a significant amount of goodwill in the relevant market due to the reputation developed by Fuller Company since it began marketing compressors in 1926. Each Fuller and FLSmidth compressor bears a unique serial number which identifies the compressor and permits an authorized service center to locate information about each specific compressor.

TESCORP is an authorized service center for "Fuller" and "FLSmidth" compressors in Tulsa, Oklahoma and is a sub-licensee of these trademarks.  From September 4, 1991 to December 16, 1998, Jeffery M. McFarlane was employed as a shop helper by TESCORP, but he was not trained as a service technician for FLSmidth products.  Plaintiffs allege that McFarlane and another employee of TESCORP opened a business called "Vane Compressors" in January 1999.  McFarlane left Vane Compressors around March 2004 and established Jeffco.  Jeffco allegedly holds itself out as being in the business of "servicing, repairing, refurbishing, and selling replacement parts for 'Fuller' and 'FLSMIDTH' rotary vane compressors."  Dkt. # 2, at 11.  Plaintiffs allege that Jeffco

2

is not an authorized service center for Fuller or FLSmidth compressors, but Jeffco advertises its services to customers throughout the United States.  According to plaintiffs, Jeffco repairs Fuller and FLSmidth compressors with parts that were not manufactured by FLSmidth A/S or FLSmidth Inc. or removes the name plate, bearing a Fuller or FLSmidth trademark, for the replacement compressor or part and replaces the name plate with a "Jeffco" trademark.

FLSmidth A/S, FLSmidth Inc., and TESCORP filed this lawsuit alleging that Jeffco infringed on FLSmidth's registered trademarks and trade dress, and customer confusion would harm FLSmidth A/S' and FLSmidth Inc.'s reputation in the relevant business community.  The parties had a settlement conference before Magistrate Judge Frank H. McCarthy on May 12, 2008 and he filed a settlement report noting that the case had settled. Dkt. # 32.  However, it appears that the parties could not finalize a settlement agreement and Jeffco requested an extension of time to answer.  Dkt. # 33, at 1-2.  The Court ordered the parties to submit dismissal documents, or Jeffco to answer, by June 16, 2008.  Jeffco answered and filed counterclaims against plaintiffs for breach of settlement agreement, tortious interference with business relations, commercial disparagement, corporate defamation, abuse of process, and restraint of trade.  Jeffco alleges that plaintiffs disparaged Jeffco at a trade show on May 15, 2008 by "loudly and belligerently inform[ing] attendees and Jeffco employees of Plaintiffs [sic] lawsuit and its purposes." Dkt. # 37, at 16.  Jeffco also alleges that this lawsuit constitutes a restraint of trade and plaintiffs' true motivation for filing this lawsuit is to prohibit Jeffco from competing in the marketplace.

## II.

Plaintiffs ask the Court to dismiss Counts III, V, and VI of defendant's counterclaims because the counterclaims do not state a claim upon which relief can be granted.  Rule 8 provides

that a claim or counterclaim must contain "a short and plain statement of the claim [or counterclaim] showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of a pleading is "to give opposing parties fair notice of the basis of the claim against them so that they may respond to the [counterclaim], and to apprise the court of sufficient allegations to allow it to conclude, if the allegations are proved, that the claimant has a legal right to relief." Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n of Kansas, 891 F.2d 1473, 1480 (10th Cir. 1989) (quoting Perington Wholesale, Inc. v. Burger King Corp., 631 F.2d 1369, 1371-72 (10th Cir. 1979)). If a counterclaim fail to meet the standards of Rule 8(a), a district court may dismiss the counterclaim under Fed. R. Civ. P. 12(b)(6). Mountain View Pharmacy v. Abbott Laboratories, 630 F.2d 1383, 1389 (10th Cir. 1980). A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007). However, leave to amend should be granted if the party could cure the pleading deficiency. Mountain View, 630 F.3d at 1389.

Plaintiffs also request a more definite statement as to Counts II and IV of defendant's counterclaims. Under Rule 12(e), the Court may require a party to cure defects in a vague or ambiguous pleading so as to allow the opposing party to frame a responsive pleading. Rule 12(e) reads, in pertinent part: "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e). The Court has discretion to treat vague pleadings under either Rule 12(b)(6) or Rule 12(e). See 5C C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1376 (3d ed. 2004) ("If the

4

pleading is impermissibly vague, the court may act under Rule 12(b)(6) or Rule 12(e), whichever is appropriate, without regard to how the motion is denominated.").

**III.**

Plaintiffs ask the Court to dismiss Counts III, V, and VI of defendant's counterclaims for failure to state a claim, and to order defendant to provide a more definite statement of Counts II and IV.   Defendant argues that plaintiffs should be aware of the facts supporting defendant's counterclaims, whether or not such facts are stated in the counterclaims, and plaintiffs' motion should be denied.

<u>Tortious Interference with Business Relations (Count II)</u>

Plaintiffs request a more definite statement of defendant's counterclaim for tortious interference with business relations.  Defendant alleges that plaintiffs "have maliciously pursued on a course intended to harm and embarrass Defendant Jeffco with its customers, employees and the business community which it shares with Plaintiffs."  Dkt. # 37, at 16.  Defendant alleges that it is aware of customers that have been influenced by plaintiffs' actions and it has suffered financial injury.   Defendant acknowledges that its counterclaim states few facts supporting this claim. However, it argues that the factual allegations of the complaint and unspecified information produced in discovery should alert plaintiffs to the factual basis for this claim.

Defendant has not provided any authority for its argument that the Court should look beyond the allegations of the counterclaim to determine if plaintiffs have sufficient knowledge of defendant's counterclaim to file a responsive pleading, and the Court declines to engage in this type of speculation.  A complaint or counterclaim must state a claim with sufficient clarity that the opposing party can respond without filing a motion for more definite statement or conducting

5

discovery.  United States v. $39,000 in Canadian Currency, 801 F.2d 1210, 1216 (10th Cir. 1986).

Another purpose of notice pleading under the Federal Rules of Civil Procedure is to show the Court

that a party has stated a claim that entitles the pleader to relief.  Perington Wholesale, 631 F.2d at

1371 ("The essential function of a complaint under modern pleading is twofold--to give the

opposing parties fair notice of the basis of the claim against them so they may respond to the

complaint, and to apprise the court of sufficient allegations to allow it to conclude, if the allegations

are proved, that the claimant has a legal right to relief.").  The Court will confine its analysis to the

allegations of defendant's counterclaim without assuming that plaintiff has learned additional

information through discovery or other means.

     Plaintiffs argue that it is unclear whether defendant is alleging a claim for tortious

interference with business relations or a claim for tortious interference with prospective economic

advantage.  To state a claim for tortious interference with business relations, a party must allege: (1)

that the party "had a business or contractual right with which there was interference"; (2) "[t]hat the

interference was malicious and wrongful, and that such interference was neither justified, privileged

nor excusable"; and (3) "[t]hat damage was proximately sustained as a result of the complained-of

interference."  Mac Adjustment, Inc. v. Prop. Loss Res. Bureau, 595 P.2d 427, 428 (Okla. 1979);

Navistar Int'l Transp. Corp. v. Vernon Klein Truck & Equip., 919 P.2d 443, 446 (Okla. Civ. App.

1994); see Dill v. Edmond, 155 F.3d 1193, 1207-08 (10th Cir. 1998).  Malice is defined as "the

intentional performance of a wrongful act without justification or excuse."  Morrow Dev. Corp. v.

Am. Bank and Trust Co., 875 P.2d 411, 416 (Okla. 1994).  To state a claim for tortious interference

with prospective economic advantage, a party must allege:

the existence of a valid business relation or expectancy, knowledge of the relationship or expectancy on the part of the interferer, an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the party whose relationship has been disrupted.

Boyle Servs., Inc. v. Dewberry Design Group, Inc., 24 P.3d 878, 879 (Okla. Civ. App. 2001).

The allegations of the counterclaim state the essential legal elements of a claim for tortious interference with a business or contractual relationship, but it is unclear what facts defendant intends to rely on to support this claim. This type of conclusory pleading has specifically been rejected by Twombley and, although dismissal may not be appropriate, plaintiffs' motion for a more definite statement is appropriate. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding."). It is not clear how defendants are supposed to submit a responsive pleading when defendant states no facts in support of its claim for tortious interference with business relations. As the Court has noted, it may not assume that plaintiffs have a greater knowledge of defendant's counterclaim than the facts stated in the answer or counterclaim, nor will the Court consider facts stated in defendant's response to this motion. See LCvR 7.2(j) ("Factual statements or documents appearing only in the brief shall not be deemed to be a part of the record in the case, unless specifically permitted by the Court."). Based on the Court's review of defendant's counterclaim, plaintiffs are entitled to a more definite statement before responding to this claim.

Commercial Disparagement (Count III)

Plaintiffs argue that Oklahoma does not recognize a claim for commercial disparagement and this counterclaim should be dismissed. Even if the Court were to consider judicial decisions from other states, plaintiffs argue that defendant's counterclaim does not allege that plaintiffs made a false

7

statement and this is an essential element of a claim of commercial disparagement regardless of which state's law is considered.  Defendant does not respond to plaintiffs' arguments concerning this counterclaim.

Defendant did not identify, and the Court could not find, any Oklahoma judicial decisions recognizing a claim for commercial disparagement.  However, other states within the Tenth Circuit permit such claims.  The Colorado Court of Appeals has adopted the Restatement (Second) of Torts § 623A and a plaintiff must allege six elements to state a claim for commercial disparagement:

> (1) a false statement; (2) published to a third party; (3) derogatory to the plaintiff's business in general, to the title to his property, or its quality; (4) through which the defendant intended to cause harm to the plaintiff's pecuniary interest, or either recognized or should have recognized that it was likely to do so; (5) with malice; (6) thus, causing special damages.

TMJ Implants, Inc. v. Aetna, Inc., 498 F.3d 1175, 1200 (10th Cir. 2007) (quoting Teilhaber Mfg. Co. v. Unarco Materials Storage, a Div. of Unarco Indus., Inc., 791 P.2d 1164, 1166 (Col. App. 1989)).  The Tenth Circuit refers to a claim under § 623A as the tort of injurious falsehood and has noted that several states, including New Mexico, Texas, and Delaware, recognize this claim. Bankwest v. Fidelity & Deposit Co. of Maryland, 63 F.3d 974, 980 (10th Cir. 1995).  An essential element of a claim of injurious falsehood is the publication of a false statement.  Id.

Plaintiffs' motion to dismiss should be granted as to defendant's counterclaim for commercial disparagement.  As an initial matter, defendant has made no attempt to demonstrate that commercial disparagement is a viable claim under Oklahoma law and the Court can not find any Oklahoma authority supporting such a claim.  Even if the Court were to apply § 623A of the Restatement (Second) of Torts, defendant still has not stated a claim for commercial disparagement. Defendant's counterclaim alleges that representatives of plaintiffs "sought out Jeffco's trade show

boot [sic] to loudly and belligerently inform attendees and Jeffco employees of Plaintiffs [sic] lawsuit and its purposes." Dkt. # 37, at 16. Defendant also alleges that plaintiffs have contacted Jeffco's customers and Jeffco has been harmed by plaintiffs' statements. However, the counterclaim does not actually allege that plaintiffs' made a false statement or identify who made any defamatory statements. Therefore, the allegations of defendant's counterclaim are insufficient to state a claim for commercial disparagement, even if Oklahoma recognized such a claim. Due to defendant's failure to identify any legal authority or state sufficient facts supporting this claim, defendant's claim for commercial disparagement should be dismissed.

Corporate Defamation (Count IV)

Plaintiffs assert that defendant's counterclaim for corporate defamation fails to identify any specific defamatory statements and they request a more definite statement of defendant's counterclaim. Defendant responds that it has produced information in discovery describing the alleged defamatory statements and states:

> Defendant's Counterclaims are well known in detail to Plaintiffs. For the Plaintiffs to argue that without more definition they cannot frame an answer is a mere procedural prosthetic which the Plaintiffs clearly don't need. Plaintiffs' case is now four months old going on four years. Plaintiffs should be admonished to immediately stop the effort to exhaust the Defendant's litigation resources, and rather to move expeditiously to the respective merits of the parties' claims.

Dkt. # 47, at 7. In essence, defendants argue that plaintiffs are aware of the facts supporting this counterclaim, even if the counterclaim is defectively pled, and a more definite statement is unnecessary.

Defendant's counterclaim does not adequately plead a claim of defamation. Under Oklahoma law, a plaintiff must allege four elements: "(1) a false and defamatory statement; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the

publisher; and (4) either the actionability of the statement irrespective of special damage, or the existence of special damage caused by the publication." Trice v. Burress, 137 P.3d 1253, 1257 (Okla. Civ. App 2006) (quoting Mitchell v. Griffin Television, LLC, 60 P.3d 1058, 1061 (Okla. Civ. App. 2002)). Defendant alleges that plaintiffs made false statements and published these statements to third parties for the purpose of harming defendant's business, but defendant does not specify what statements were made or which plaintiff made the allegedly defamatory statements. If defendant does not notify plaintiffs of what defamatory statements form the basis of its defamation claim, it is not clear how plaintiffs may file a responsive pleading. While defendant has generally pled the elements of a defamation claim, defendant has not provided sufficient notice to plaintiffs of the substance of its counterclaim to permit plaintiffs to file a responsive pleading. Therefore, plaintiffs' motion for a more definite statement of defendant's corporate defamation claim should be granted.

Abuse of Process (Count V)

Plaintiffs ask the Court to dismiss defendant's abuse of process counterclaim, because the counterclaim fails to state facts supporting each element of the claim. Defendant does not specifically respond to this argument, but generally argues that all of its counterclaims are legally sufficient. Defendant's counterclaim alleges that "Plaintiffs have instituted this litigation not for the purpose of obtaining redress for its alleged claims, but rather as a mechanism to employ the District Court in an effort to restrain and disparage the business of Defendant Jeffco." Dkt. # 37, at 17. Defendant further alleges that the "purpose of Plaintiffs [sic] prosecution is apparent," but defendant offers no factual allegations in support of this statement.

10

The elements of an abuse of process claim are "(1) the improper use of the court's process (2) primarily for an ulterior or improper purpose (3) with resulting damage to the plaintiff asserting the misuse." Callaway v. Parkwood Village, L.L.C., 1 P.3d 1003, 1004 (Okla. 2000). The key issue in any abuse of process claim is whether a party has attempted to use the legal system "to obtain a result not lawfully warranted or properly attainable." Neil v. Pennsylvania Life Ins. Co., 474 P.2d 961, 965 (Okla. 1970). Even if the plaintiff in the predicate action was motivated by malicious intentions, there is not an abuse of process if the plaintiff uses the predicate action for an authorized purpose. Greenberg v. Wolfberg, 890 P.2d 895, 905 (Okla. 1994); Gore v. Taylor, 792 P.2d 432, 436 (Okla. Civ. App. 1990).

Defendant has not stated a counterclaim of abuse of process. Defendant alleges the first element of an abuse of process claim, improper use of the judicial system, but defendant's blanket allegation that the purpose of plaintiffs' lawsuit is "apparent," without any supporting factual allegations, is insufficient. Based on the complaint, plaintiffs have stated a legitimate purpose for filing this lawsuit and the Court will not infer an improper purpose without some factual allegations to support defendant's counterclaim. Claims of trademark and trade dress infringement may have incidental effects of restraining defendant's business, but the mere filing of such claims does not create an inference that plaintiffs filed the lawsuit with an improper purpose. Although Fed. R. Civ. P. 8 requires defendant to provide only a "short and plain statement of the claim," defendant's bare allegation that plaintiffs' improper purpose is "apparent" does not satisfy this standard. This counterclaim should be dismissed, but defendant will be given an opportunity to file an amended complaint more clearly stating a claim of abuse of process.

Restraint of Trade (Count VI)

Plaintiffs ask the Court to dismiss defendant's antitrust counterclaim under the Sherman Act,

15 U.S.C. § 1 et seq. Defendant's counterclaim, in its entirety, states as follows:

    20.    Plaintiffs have in concert and conspiratorially filed and utilized the case at bar to eliminate or stifle competition.

    21.    Plaintiffs' actions herein seek to restrain the market, prohibit Jeffco from competing in the marketplace, and otherwise control the market to the detriment of consumers and purchasers of rotary vane compressor goods and services.

    22.    These anticompetitive or unfair business practices propagated by the actions of the Plaintiffs have immediately and materially injured Jeffco and harmed its business future.

Dkt. # 37, at 18. Defendant asserts that these allegations are sufficient to state an antitrust claim, because plaintiffs have conducted some discovery and should be aware of the alleged wrongful acts which support this counterclaim.

As the Court has noted above, the Court's review is limited to the allegations of defendant's counterclaim and the Court will not infer additional knowledge on the part of plaintiffs. Twombley specifically addressed the pleading requirements under Fed. R. Civ. P. 8(a) for an antitrust claim under the Sherman Act. A plaintiff must allege enough factual allegations "to raise a right to relief above the speculative level." Twombley, 127 S.Ct. at 1965. In the context of an antitrust claim, the complaint must state facts which, if taken as true, suggest that an agreement was made and that the agreement or conspiracy was illegal. Id. Although there is not a heightened pleading standard for antitrust claims, courts should be cognizant that antitrust discovery is expensive and the plaintiff must state a plausible antitrust claim, both factually and legally, before discovery should be permitted. Id. at 1966-67.

Defendant cites Hear-Wear Technologies, LLC v. Oticon, Inc., 551 F. Supp. 2d 1272 (N.D. Okla. 2008), to support its argument that its antitrust counterclaim states a claim upon which relief can be granted.  In Hear-Wear, this Court found that the defendant had stated an antitrust claim under 15 U.S.C. § 2, because the defendant pled sufficient facts to state each element of a monopolization claim.  Id. at 1279.   The substantive issue in Hear-Wear concerned whether the defendant had properly identified the relevant geographic market as the United States.  There, the counterclaim provided sufficient notice to the plaintiff of the relevant geographic market and plaintiff's motion to dismiss was denied. Contrary to defendant's assertion, this Court did not make any statements suggesting that an antitrust claim without any supporting facts would survive a motion to dismiss.

It appears that defendant is attempting to state a claim under § 1 of the Sherman Act, by alleging that certain plaintiffs engaged in an illegal conspiracy or agreement to restrain trade. Section 1 of the Sherman Act states that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States . . . is declared to be illegal." 15 U.S.C. § 1.  A conspiracy consists of "two of more entities that previously pursued their own interests separately . . . combining to act as one for their common benefit."  Abraham v. Intermountain Health Care, Inc., 461 F.3d 1249, 1256 (10th Cir. 2006) (quoting Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 769 (1984)).  To state a claim under § 1 of the Sherman Act, a party must allege that a contract, combination or conspiracy resulted in an unreasonable restraint of trade.  Randy's Studebaker Sales, Inc. v. Nissan Motor Corp., 533 F.2d 510, 516 (10th Cir. 1976).

13

Defendant's antitrust counterclaim does not allege sufficient facts to identify which entities engaged in a conspiracy or even that a restraint of trade occurred.   The alleged conspirators are identified only as "plaintiffs" and the alleged restraint of trade is this lawsuit.   Based on the corporate disclosure statement, FLSmidth A/S is the parent company of FLSmidth Inc. and these entities are not legally capable of entering a conspiracy that could fall under § 1 of the Sherman Act. Copperweld, 467 U.S. at 776 ("Unless we second-guess the judgment of Congress to limit § 1 to concerted conduct, we can only conclude that the coordinated behavior of a parent and its wholly owned subsidiary falls outside the reach of that provision.").   Therefore, at least two of plaintiffs are not conspirators with each other, because the actions of a parent company and its subsidiary are treated as unilateral under § 1 of the Sherman Act.   The counterclaim also does not allege that plaintiffs' activities had an anticompetitive effect on the marketplace, but simply alleges that Jeffco has been harmed by plaintiffs' conduct.   Defendant's counterclaim fails to satisfy either of the essential elements for a claim § 1 of the Sherman Act and it should be dismissed.

## IV.

The Court finds that plaintiffs' motion should be granted in its entirety.   Counts II through VI of defendant's counterclaims do not allege sufficient facts to satisfy the notice pleading requirement of the Federal Rules of Civil Procedure.   However, defendant should be permitted to file amended counterclaims or a more definite statement to address the pleading deficiencies with

Counts II through VI of the counterclaims.[2]   The Court directs defendant to file amended counterclaims curing all of the pleading deficiencies in one document.

**IT IS THEREFORE ORDERED** that the Motion by All Plaintiffs/Counter-Defendants (1) To Dismiss Jeffco's Counterclaim Counts III, V, and VI, or, in the Alternative, for a More Definite Statement; (2) For a More Definite Statement as to Jeffco's Counterclaim Counts II and IV; and (3) for an Extension of Time to Answer Jeffco's Counterclaim Count I (Dkt. # 40) is **granted**. Defendant may submit amended counterclaims in compliance herewith no later than **October 3, 2008**.

**DATED** this 25th day of September, 2008.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[2]   Defendant is advised that it should omit certain counterclaims, such as commercial disparagement or restraint of trade, if it can not state sufficient facts to state a claim or can not locate legal authority to support these claims.  This should not prevent defendant from raising a claim based on a good faith extension of existing law, but defendant must have a sound legal basis for every claim raised in its amended pleading.

15